UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRED A. CLANCY

       Plaintiff,

      v.                                       **REPORT AND RECOMMENDATION**
                                                 7:06-CV-1486 (LEK)

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## Introduction

1.  Plaintiff Fred A. Clancy brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

2.  For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted in part and Defendant's cross-motion for judgment on the pleadings be denied.[3]

## Background

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated January 14, 2009.
[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

3. On October 5, 2004, Plaintiff, then a 50 year-old warehouse specialist, filed applications for DIB and SSI (R. at 52-57).[4] Plaintiff claimed he was disabled since August 10, 2004, due to illiteracy, a hip impairment caused by Perthes disease,[5] coronary artery disease ("CAD"), peripheral artery disease ("PAD"), past myocardial infarction, surgical insertion of five stents in his heart, hypertension, renal insufficiency, anemia of chronic disease,[6] and a right foot crush injury with surgical excision of a Morton's neuroma[7] (R. at 68, 105). His application was denied initially on February 7, 2005 (R. at 27-32, 268). Plaintiff filed a timely request for a hearing on February 21, 2005 (R. at 33).

4. On October 6, 2005, Plaintiff appeared before the ALJ (R. at 291-326).The ALJ considered the case *de novo* and, on November 15, 2005, issued a decision finding Plaintiff was not disabled (R. at 10, 12-23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on November 21, 2006 (R. at 6-9). On December 13, 2006, Plaintiff filed this action.

## Discussion

### I. Legal Standard and Scope of Review

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by

---

[4] Citations to the underlying administrative record are designated as "R."
[5] Perthes disease is a childhood condition associated with temporary blood loss to the hip joint. Legg-Calve-Perthes Disease, MayoClinic.com, http://mayoclinic.com/health/legg-calve-perthes-disease/DS00654 (last visited Mar. 27, 2009).
[6] Anemia of chronic disease is a "mild to moderate anemia secondary to any of numerous chronic diseases lasting more than two months, such as infections, inflammatory conditions, or malignancies." Dorland's Illustrated Medical Dictionary 79 (31st ed. 2007) [hereinafter Dorland's].
[7] A Morton's neuroma is a "tumor growing from a nerve or made up largely of nerve cells and nerve fibers" that results from chronic compression of a branch of the plantar nerve by the metatarsal heads. Id. at 1281, 1285.

substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

     6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

     7. The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

## II. The ALJ's Decision

8. The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act. The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 10, 2004 (R. at 17). At step two, the ALJ found Plaintiff's hypertension, renal insufficiency, anemia, and hip impairment were not severe impairments (R. at 18). However, the ALJ found that Plaintiff's CAD, right foot injury, and PAD were severe impairments, but not severe enough to individually, or in combination, meet a Listed impairment. Id. At step four, the ALJ concluded Plaintiff retained the residual functional capacity ("RFC") to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day, sit 6 hours in an 8-hour day[,] . . .push and/or pull without limitation in his upper extremities. . . [and] occasionally climb, balance, kneel, crouch, crawl and stoop" (R. at 20). Given his RFC, the ALJ found Plaintiff was unable to perform his past relevant work. Id. At step five, the ALJ concluded Plaintiff was closely approaching advanced age, had a marginal education, and had no transferable skills. Id. Considering these factors and Plaintiff's RFC to perform substantially all the requirements of light work, the ALJ concluded under Rule

202.10 that Plaintiff was not disabled (R. at 21).

    9. Based on the entire record, the Court recommends remand because the ALJ failed to fulfill his duty to develop the record, improperly analyzed Plaintiff's credibility, and improperly found Plaintiff's hip impairment was not severe, resulting in a decision not supported by substantial evidence.

### III. Analysis

#### A. Duty to Develop the Record

##### 1. Educational Abilities

    10. Education is one of the vocational factors an ALJ will consider at step five, to determine whether a claimant can adjust to other work. 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). Education primarily means formal schooling or training. 20 C.F.R. §§ 404.1564(a)-(b), 416.964(a)-(b). An ALJ categorizes a claimant's educational abilities using defined terms in the regulations. Id. §§ 404.1564(b)(1)-(5), 416.964(b)(1)-(5).

    Of particular relevance here are the categories of "illiteracy" and "marginal education." Illiteracy is "the inability to read or write." Id. §§ 404.1564(b)(1), 416.964(b)(1). A person is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id. "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. . . . [G]enerally . . . formal schooling at a 6th grade level or less is a marginal education." Id. §§ 404.1564(b)(2), 416.964(b)(2). However, "the numerical grade level that [a claimant] completed in school may not represent [his] actual educational abilities." 20 C.F.R. §§ 404.1564(b), 416.964(b). Therefore, the ALJ will use a claimant's numerical grade level to determine his educational abilities, only "if there is no other evidence to contradict it." Id.

    In this case, the record shows that Plaintiff completed the seventh grade (R. at 75), but other evidence contradicts a finding that Plaintiff has a seventh grade literacy level. For

example, Plaintiff testified that he is unable to read or write and that his wife "has to do everything like that for me" (R. at 301). Plaintiff explained to the ALJ, "I'm an illiterate." Id. Plaintiff's testimony is supported by indications that his wife filled out the disability forms on record. See, e.g., (R. at 85, 101). She also read the names of Plaintiff's medications for him when the ALJ asked about them at the hearing (R. at 301-04). When the ALJ suggested the record showed Plaintiff could perform sedentary work, Plaintiff elaborated on his inability to read and write, explaining "I couldn't even—if you put your name in front of me I couldn't tell you what it was without my wife saying okay--" (R. at 313). While the ALJ found that Plaintiff's testimony was "not entirely credible," other courts have found that an absence of complete credibility is "not enough of a basis, by itself, for the ALJ to have rejected plaintiff's testimony that he cannot read." Gross v. McMahon, 473 F.Supp.2d 384, 389 (W.D.N.Y. 2007).

  The record also contains some evidence that Plaintiff is not illiterate as defined by the regulations. For example, the record indicates Plaintiff "fill[ed] out rece[i]pts" as a short haul truck driver (R. at 81), and a checkmark indicates that he wrote reports or completed forms as a warehouse specialist (R. at 82). At the hearing, the ALJ noted: "Not every job requires you to read sir. Bear in mind you did work for seven years for Jefferson County [sic] and you did it for seven straight years—" (R. at 313). While the ALJ correctly focused on Plaintiff's ability to perform his past work as a short haul truck driver and a warehouse specialist despite his limited literacy, the ALJ did not elicit further evidence about the reading and writing demands of those jobs. Filling out receipts may have only required Plaintiff to initial that he received payment equal to the number on the receipt. On the other hand, Plaintiff may have had to write out a list of goods delivered and an amount. Similarly, writing reports or completing forms could require no literacy—if for example, a co-worker filled out the forms—or could require enough literacy to establish Plaintiff can "read or write a simple message" as required by the regulations to establish literacy. Absent further testimony, the probative value of Plaintiff's past work is very

limited.

Despite this contradictory evidence, the ALJ did not elicit further evidence regarding Plaintiff's literacy level, nor did he request Plaintiff's educational ability be tested. Instead, the ALJ concluded, without discussion, that Plaintiff had a "marginal education" (R. at 20, 22). It is well-established in the Second Circuit that an ALJ has an affirmative duty to develop the record "in light of the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotations and citations omitted). Indeed in this case, the ALJ was under a heightened duty to develop the record in order to ensure a fair hearing because Plaintiff was appearing *pro se*. See Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) ("[T]he ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal quotations and citations omitted). The ALJ could have easily questioned Plaintiff about the literacy demands of his past work, his daily activities, or even maintaining his driver's license. Moreover, as Plaintiff correctly points out, the ALJ could have had Plaintiff's literacy tested. See, e.g., Dixie v. Comm'r of Soc. Sec., No. 5:05-CV-345, 2008 WL 2433705, at *6 (N.D.N.Y. June 12, 2008) (describing two tests performed by a consultative examiner probative of the claimant's literacy level); see also 20 C.F.R. §§ 404.1512(f); 416.912(f) (noting that if information is not readily available from a claimant's records a consultative examination may be ordered). The ALJ could have met his duty to develop the record by questioning Plaintiff or by ordering a cognitive examination, but he failed to do so.

The Court notes that Plaintiff's literacy was a crucial area of inquiry in this case. The ALJ's determination that Plaintiff was "not disabled" (R. at 21) turned on his application of Rule 202.10, which applies to a claimant with marginal education or limited education, but excludes illiteracy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, R. 202.10. Under Rule 202.09, an "illiterate," but otherwise identical claimant would be considered "disabled." 20 C.F.R. Pt. 404, Subpt. P, App.

2, R. 202.09.

In light of the ALJ's heightened duty to the *pro se* Plaintiff and the inadequacy of the evidence on the issue, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff has a "marginal education" and recommends remand for further development of the record.

## 2.  Treating Physician's Opinion

11.  The Court also notes that the ALJ's heightened duty to develop the record of a *pro se* claimant required him to re-contact Plaintiff's treating physician, Dr. David W. Towle, D.O., or to at least not discourage Plaintiff from doing so himself. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

In this case, on May 19, 2005, Dr. Towle found Plaintiff "temporarily fully disabled" but stated that he was "unable to fully assess [Plaintiff's functional capacity] at this time" because Plaintiff was undergoing further medical analysis (R. at 229-32). The ALJ rejected Dr. Towle's opinion that Plaintiff was "temporarily fully disabled" as a question reserved for the Commissioner and "inconsistent with other sources of record" and, therefore, assigned Dr. Towle "minimal weight" (R. at 19-20). Assigning Dr. Towle "minimal weight" is somewhat misleading because Dr. Towle never completed a medical opinion; instead, he indicated that he needed additional time to formulate his opinion. Dr. Towle's opinion was particularly important because, although Plaintiff's cardiologist, Dr. Uzma Iqbal, opined Plaintiff had almost no limitations, she was only treating Plaintiff for his cardiac impairments and, therefore, may not have considered his combination of impairments in her analysis. See (R. at 225-28, 253-56). The fact that Dr. Towle's opinion was incomplete should have alerted the ALJ of his own duty to develop the record. 20 C.F.R. 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when . . . the report does not contain all the necessary information . . ."); see Gray v. Astrue, No. 04-CV-3736, 2007 WL 2874049, at *6-7 (S.D.N.Y.

Oct. 3, 2007) (finding the ALJ did not adequately develop the record when the claimant's treating physician needed more information to form an opinion, but the ALJ failed to give him "the additional time he needed to gather this information").

Alternatively, the ALJ could have "advise[d] plaintiff that he should obtain a more detailed statement from his treating physician." Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980). Instead, the ALJ actively discouraged Plaintiff from re-contacting his treating physicians. After the ALJ explained that Plaintiff's cardiologist and the State's doctors had not issued favorable opinions, Plaintiff's wife and the ALJ engaged in the following colloquy:

> WTN: Is there any way that we could get things ourselves to prove --
> ALJ: Oh, yes.
> WTN: --from the doctors?
> ALJ: --if you can, but then you create a bigger nightmare for me in that if you go back to the doctor's office and then get me an assessment that says he's disabled how do I reconcile that against two of them in '05 that say he's not.
> WTN: Um-hum.
> ALJ: Now it looks like the doctors are throwing you a bone and doing you a favor. Now who do I believe? I'm not sure. I mean, it's just --
> WTN: I don't think their professionalism would do that myself if they say –
> ALJ: Well I mean, you're the one that suggested going back to them.
> WTN: That's what I'm saying that I can't imagine them --
> ALJ: At what point, you know --
> WTN: --just throwing us a bone, you know, it seems like, you know –
>         . . .
> ALJ: All right. I'm still going to hold it for a week.
> (R. at 324-25).

It is clear to the Court that the ALJ erred in failing to give Dr. Towle more time to gather the information he needed and in failing to contact him to ascertain his opinion of Plaintiff's RFC. Peed v. Sullivan, 778 F. Supp 1241, 1246 (E.D.N.Y.1991) (noting that an ALJ must "make every reasonable effort to obtain . . . a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability"). Where other courts have found error in an ALJ failing to advise a Plaintiff to re-contact his treating physician, this ALJ's conduct went beyond mere omission. Here, the ALJ actively discouraged Plaintiff from contacting his physician, even when the Plaintiff sought counsel from the ALJ. Under these

circumstances, the Court concludes that the ALJ erred in actively discouraging Plaintiff from contacting his treating physicians for more detailed opinions. See Hankerson, 636 F.2d at 896 (holding that the ALJ erred in failing to advise plaintiff that he should obtain a more detailed statement from his treating physician); Jones v. Apfel, 66 F.Supp.2d 518, 530 (S.D.N.Y.1999) (remanding where the ALJ "never offered to subpoena [the claimant's] medical records for her," "did not explain why the medical records were necessary, or that he was planning to rule against [the claimant] and that she needed to produce evidence from her treating physicians to convince him otherwise"). While the ALJ held the record open for an additional week, this does not satisfy his duty to a *pro se* claimant especially because Plaintiff and his wife were unlikely to seek additional evidence after the ALJ's discouraging response to such a suggestion. In light of these errors, remand is necessary. Dickson v. Astrue, No. 1:06-CV-0511, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) ("Remand is necessary if the ALJ fails to attempt to contact the plaintiff's treating physician to properly determine [his] RFC.").

### B.  Credibility

12.  "[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must engage in a two-step analysis by first determining whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. §

404.1529(c); Borush v. Astrue, No. 3:05-CV-361, 2008 WL 4186510, at *12 (N.D.N.Y. Sept. 10, 2008). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[8] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Here, the ALJ summarily concluded that "claimant's allegations as to the limiting effects of his impairments are not entirely credible, at least not to the extent that he would be unable to perform work at any level of exertion" (R. at 19). The ALJ continued, "He is able to cook, clean, go shopping and do laundry." Id. However, the Court notes that Plaintiff testified he does not help with housework (R. at 305); used to mow the lawn with a riding mower but his son does all other outdoor chores (R. at 88); helps prepare meals "once in a great while" (R. at 305) or assists his wife by peeling potatoes (R. at 87); and accompanies his wife to the store, but usually waits in the car (R. at 305). There is no evidence in the record that Plaintiff does laundry.

The ALJ's credibility analysis was flawed for two reasons. First, the ALJ failed to make either of the required findings in the two-step credibility analysis. The ALJ failed to state whether Plaintiff's impairments could reasonably be expected to produce his alleged symptoms. See Crysler v. Astrue, 563 F.Supp.2d 418, 442 (N.D.N.Y. 2008) (finding the ALJ's credibility analysis flawed in part because "the ALJ failed to state in his decision whether plaintiff's medical impairments could reasonably be expected to produce the pain or other symptoms alleged"). The ALJ also failed to assess the "intensity, persistence, and limiting effects" of Plaintiff's symptoms. Instead, the ALJ made the conclusory finding that Plaintiff was "not entirely credible" (R. at 19). Second, his reasoning with respect to Plaintiff's daily activities misstates the record.

---

[8] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

See Aragon-Lemus v. Barnhart, 280 F.Supp.2d 62, 70 (W.D.N.Y. 2003) (finding the ALJ's credibility analysis not supported by substantial evidence in part because the ALJ mischaracterized the Plaintiff's testimony); see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *6 (N.D.N.Y. Mar. 3, 1998) (remanding, in part, because "the ALJ made no explicit findings regarding plaintiff's credibility" and based his reasoning on erroneous restatements of the record). The ALJ stated Plaintiff was able to "cook, clean, go shopping, and do laundry," as if Plaintiff had no limitations in these daily activities (R. at 19). However, the evidence of record indicates Plaintiff did almost no cooking, did not clean, did not do laundry, and went to the store, but stayed in the car (R. at 87, 305).

The ALJ continued his credibility discussion and stated in conclusory terms, that Plaintiff's "treating physicians' assessments and opinions do not support [his] allegations" (R. at 19). However the Court notes that the ALJ will necessarily have to reevaluate the opinions of Plaintiff's treating physicians when he receives a complete report from Dr. Towle.

### C.  Severity

13.  At step two, the ALJ must determine whether an individual has an impairment or combination of impairments that are severe. 20 C.F.R. § 404.1520. The Second Circuit has warned that the step two analysis may not do more than "screen out *de minimis* claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995). An impairment is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a). "[B]asic work activities" are the "abilities and aptitudes necessary to do most jobs," examples of which include, "walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; . . . seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [using] judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also S.S.R. 85-28, 1985 WL 56856, at *3-4.

Here, Plaintiff objects to the ALJ's finding that "claimant has not established the existence of a 'severe' hip impairment" (R. at 18). The ALJ reasoned, "there are minimal clinical findings regarding such and no indication of such imposing more than minimal limitations on claimant's ability to perform basic work activities." Id.

The record shows that Plaintiff has a hip impairment due to Perthes disease. From 1990 to 1999 Plaintiff saw Dr. Edward N. Powell, M.D. at North Country Orthopaedic Group for impairments including pain in his left hip as a result of Perthes (R. at 111-18, 122-26). Dr. Powell's records show Plaintiff has an "incongruity of the left hip with severe coxa magna[9] and coxa breva[10]" and his left leg is one centimeter shorter than the right (R. at 113). Dr. Powell's examination in 1990 revealed that Plaintiff had only twenty degrees of internal and external rotation on the left hip and could not reach full flexion. Id. Dr. Powell recommended exercises and anti-inflammatory medicines. Id. In 1991, Plaintiff returned to Dr. Powell complaining of increased pain in his left hip (R. at 114). Dr. Powell reviewed operative and non-operative therapy options for Plaintiff and recommended the use of a cane. Id. Upon examination in 1995, Dr. Powell noted that Plaintiff's left calf was one and a half centimeters greater in circumference, consistent with someone using a shorter limb to "toe off" (R. at 116). Dr. Powell found Plaintiff's left hip had an internal rotation of fifteen to twenty degrees and an external rotation of thirty degrees. Id. Dr. Powell commented that Plaintiff's hip was "quite asymptomatic today." Id. Dr. Powell's characterized Plaintiff's Perthes disease as having "settled down" (R. at 117). Dr. Powell continued, "The patient obviously is not using any walking aids at this point, so my prognosis was probably too grave when I told him he should use a cane for symptomatic relief." Id. Although Dr. Powell did not rule out surgical intervention in the future, he did not recommend it at the time. Id. The record does not contain any further complaints of hip pain. However, on

---

[9] Coxa magna is "a condition marked by broadening of the head and neck of the femur." Dorland's, supra note 6, at 434.
[10] Coxa breva is a condition marked by a shortening of the neck of the femur. Gillette Children's, Glossary of Terms, http://www.gillettechildrens.org/default.cfm?PID=1.3.9.6 (last visited Mar. 27, 2009).

December 14, 2004, Dr. Kalyani Ganesh, M.D., the State's consultative examiner, found several abnormalities in Plaintiff's left hip (R. at 197). Dr. Ganesh found exterior rotation in Plaintiff's left hip was limited to forty degrees and abduction was limited to thirty degrees. Id. She found that Plaintiff walked "with a mild limp favoring the right" (R. at 196). Plaintiff was unable to walk on heels and toes and could only squat fifty percent. Id. Dr. Ganesh opined Plaintiff had "no gross limitation" to standing and a "mild to moderate limitation" to walking and climbing (R. at 198).

The Court acknowledges that the medical evidence of Plaintiff's hip impairment, especially after the date he claims disability, is limited. Plaintiff apparently has not sought treatment for his hip since the early 1990s. Nonetheless, Plaintiff's medical records clearly show that he has a deformity in his left hip, which has resulted in his left leg being at least one centimeter shorter than his right (R. at 113). Because of this impairment, even the State's examining doctor noted, Plaintiff walks with a limp and has a mild to moderate limitation to walking and climbing (R. at 198). As walking is a basic work activity, and Plaintiff's medical records show he has a mild to moderate limitation in such activity, the ALJ's conclusion that Plaintiff's hip impairment was "not severe" is not supported by substantial evidence and in error. Upon remand, the ALJ must also consider Dr. Towle's opinion with respect to Plaintiff's hip impairment and any related limitations.

The Court notes that the ALJ also found Plaintiff's renal insufficiency and anemia were not severe impairments. However, nurse practitioner, Anne Hall, who worked with Dr. Towle, indicated that Plaintiff's anemia of chronic disease was secondary to his renal insufficiency and was likely causing fatigue, of which he complained frequently (R. at 239-42, 246). Although Nurse Hall's opinion is not entitled to the weight accorded a treating physician, she treated Plaintiff "on a regular basis, [and] her opinion is entitled to some extra consideration." Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). The Court suggests the ALJ carefully consider Plaintiff's renal insufficiency and anemia of chronic disease upon remand and in light of

Dr. Towle's opinion.

### D. Listing, RFC, and Vocational Expert

14. Plaintiff also argues that he meets Listing 4.04, that the ALJ improperly excluded limitations from his RFC analysis, and that the ALJ erred in failing to call a vocational expert to testify. The Court cannot reach these issues because the ALJ's analysis with respect to these steps of the sequential evaluation is necessarily flawed due to his failure to fully develop the record and to properly analyze the evidence of Plaintiff's hip impairment. However, upon remand, the Court suggests that the ALJ explain his reasoning with respect to whether Plaintiff meets or equals Listing 4.04.

### Conclusion

15. Based on the foregoing, the Court recommends that Plaintiff's motion for judgment on the pleadings should be GRANTED in part and Defendant's motion for judgment on the pleadings should be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:  April 28, 2009

Syracuse, New York

### Order

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED: April 28, 2009

Syracuse, New York

_____
Victor E. Bianchini
United States Magistrate Judge